WILLIAM MOESER *et al.* v. JOHN F. LEWIS.

No. 13,482.   ( 75 Pac. 512.)

SYLLABUS BY THE COURT.

PRACTICE, DISTRICT COURT—*Judgment upon Special Findings Denied.* A motion for judgment upon special findings covering a portion of the matters established by the evidence is properly denied when such findings may be harmonized with the evidence sustaining the general verdict.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed February 6, 1904. Affirmed.

*Moore & Berger*, for plaintiffs in error.

*Ferry & Doran*, and *D. M. Relihan*, for defendant in error.

The opinion of the court was delivered by

BURCH, J.: A workman in an ice and cold-storage plant was injured by the falling of a hoisting-crane, which it was his duty to operate, from a beam supporting it some distance above his head. In an action for damages against his employers, the proprietors of the plant, for the injuries received, the workman alleged and proved a number of causes for the accident, any one of which was sufficient to account for it. The issues in the case were partially covered by special findings of fact returned by the jury, as follows:

"Ques. 1. Had not this particular crane been used for about fourteen years immediately prior to the accident? Ans. Yes, with some changes.

"Q. 2. Did not the defendants use that care which a reasonably prudent person would have exercised to have the crane with which the plaintiff was working at the time of the accident on October 2, 1901, in a reasonably safe condition? A. No.

"Q. 3. Was not the crane which fell on Lewis replaced on the same tracks soon after the accident to Lewis, and on the same night, and used in that same condition for several months after October 2, 1901, by other employees of defendants? A. Yes, with some repairs.

"Q. 4. Prior to October 2, 1901, had the crane ever fallen off of the beams on which it was moved? A. No.

"Q. 5. If the last question is answered in the affirmative, state when it was. A. ———.

"Q. 6. Was the crane, on the night of October 2, 1901, in an unsafe condition, if handled or moved with ordinary care? A. Yes.

"Q. 7. If you answer the last question in the affirmative, did the defendant know the crane was in an unsafe condition at or immediately prior to the accident to Lewis? A. Yes.

"Q. 8. Was it not the duty of Lewis to manage and

control the moving of the crane without the aid or assistance of any other person?  A.  Yes.

"Q. 9.  Was not Lewis equally as competent as defendants to judge of the risks or probability of the crane falling?  A.  No.

"Q. 10.  Had not Lewis worked with the crane several weeks immediately prior to October 2, 1901?  A.  Yes.

"Q. 11.  Prior to October 2, 1901, did the crane work properly while Lewis was operating it?  A.  Yes.

"Q. 12.  Did not the plaintiff, Lewis, when working with the crane, have an opportunity of observing or noticing its condition?  A.  Yes.

"Q. 13.  What caused the crane to fall on Lewis?  A.  No direct evidence to show what caused it.

"Q. 14.  Did not the plaintiff, Lewis, on the night of October 2, 1901, have as good an opportunity as the defendants to judge of the probability of the crane falling on him?  A.  Yes.

"Q. 15.  Was the injury to plaintiff the result of an accident occurring without the negligence of plaintiff or defendants?  A.  Without the negligence of the plaintiff."

The jury also returned a general verdict for the plaintiff, upon which judgment was entered.  A motion for a new trial was filed by the defendants, and then withdrawn.  They then filed a motion for judgment in their favor upon the special findings, which was overruled, and upon that ruling alone error is predicated.

It is contended that because the findings show a long-continued use of the crane, and that it had worked properly for several weeks before the accident, the defendants had no reason to anticipate a casualty would occur, and, hence, that actionable negligence does not appear.  Much evidence in the case, however, established the fact that the crane was in a defective and dangerous condition, as shown by find-

ing No. 6, and that though, prior to October 2, 1901, the crane had never fallen off the beams supporting it, as stated in finding No. 4, it frequently came off the tracks upon which it ran, and only by slender means was prevented from falling entirely down. Though the crane had been used a long time, it was with changes, and though replaced after the accident, it was with repairs. Findings numbered 1, 3 and 10 are entirely consistent with findings numbered 2, 6, and 7, and do not by any means exclude liability on the part of the plaintiff's employers.

It is further argued that because it was the plaintiff's duty to manage and control the movements of the crane without the assistance of any other person, because he had worked with it for a considerable length of time, had an opportunity of observing and noticing its condition, and had an opportunity to judge of the probability of the crane falling on him as soon as did his employers, he assumed the risk of an accident. This argument, however, is fairly answered by finding No. 9, that the plaintiff was not as competent as his employers to judge of the probability of the crane falling or the risk of such an occurrence, and by the case of *Railway Co. v. Bancord*, 66 Kan. 81, 71 Pac. 253, which decides that mere knowledge or opportunity of observation is not enough to raise the implication of assumed risk.

Finally, it is insisted that finding No. 13 required the court to enter judgment for the defendants, since negligence must be proved and cannot be presumed or conjectured or surmised. The only witness to the accident was the plaintiff himself, who testified that he did not know how the crane happened to get off the track. There was, therefore, as the jury found, no direct evidence of what caused the injury. This,

however, falls far short of saying that there was no evidence whatever to sustain the general verdict.  The record contains an abundance of evidence describing defects in the mechanism of the crane and its mounting, owing their existence to the negligence of the defendants, amply sufficient to produce the casualty which did occur.  By the general verdict the jury drew the conclusion that one or more of these defects caused the crane to fall.  The evidence warranted such conclusion and the jury was authorized to draw it.  (*Railway Co. v. Wood*, 66 Kan. 613, 72 Pac. 215 ; *Railroad Co. v. Perry*, 65 id. 792, 70 Pac. 876 ; *Railroad Co. v. Blaker*, ante, page 244, 75 Pac. 71.)

The finding, therefore, is not inconsistent with the general finding of the verdict.

Under these circumstances, the motion for judgment on the special findings was properly overruled, and the judgment of the district court is affirmed.

All the Justices concurring.