No. 35,943

RAY PACKER, *Appellee*, v. THE FAIRMONT CREAMERY COMPANY, THE CONCORDIA CREAMERY COMPANY, O. JASPERSON (and HENRY DANNENBERG), *Appellants*.

(146 P. 2d 401)

Opinion filed March 4, 1944.

*Charles L. Hunt*, of Concordia, argued the cause, and *Frank C. Baldwin*, of Concordia, was on the briefs for the appellants.

*A. W. Relihan*, of Smith Center, argued the cause, and *T. D. Relihan*, of Smith Center, was on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment for damages which plaintiff sustained in a collision of automobiles on highway No. 9 about a mile east of Gaylord.

Plaintiff was a farm employee of one Dannenberg, and was riding westward with him on the highway. As Dannenberg and plaintiff approached a narrow bridge there came from the west an automobile belonging to the Fairmont Creamery Company. It was driven by one Jasperson, the company's employee. He was going to Osborne with two women who were to take a state examination in cream testing that forenoon.

The cars collided on the bridge and plaintiff was injured. He sued the owners of both cars, charging negligence in various particulars. Plaintiff failed against Dannenberg but got a verdict against the creamery company. On its motion that verdict was set aside and a new trial granted. In the second trial, the issues were joined on plaintiff's second amended petition, to which defendant had answered with a general denial, a plea of contributory negli-

gence, and an allegation that whatever injuries plaintiff sustained were not due to any fault or negligence of defendant but to the negligence of others over which the defendant company had no control. Jasperson's separate answer was similar to that of his employer, the creamery company.

The cause was tried by a jury. The evidence showed that the highway was level for a long distance on each side of the bridge where the collision occurred. The bridge was 53½ feet long, and 15 feet 8 inches wide. There was a road sign "Narrow Bridge" some 282 feet west of the bridge and a similar sign 278 feet east of the bridge. There were wooden approach banisters to the bridge. Both cars were about 5 feet 8 inches wide. The right wheel treads of the creamery company's car showed dimly that its driver was keeping close to the south side of the highway as he came upon the bridge. Dannenberg's car veered and skidded from the north side to the south side of the highway into the path of defendant's car when Dannenberg slammed on his brakes as he approached the bridge. After the accident, one of the persons present obtained some flour from a near-by house and sprinkled it in the wheel tracks of the two cars, and also at the point of collision. Photographs were then taken and they showed (without dispute) that Dannenberg's car had skidded almost completely over to the south side of the highway as it entered the bridge. One photograph also showed that defendant's car veered sharply to the north just before the point of collision.

The rates of speed of the two cars, and whether either or both slowed down as they approached the bridge, and whether each driver assumed that the other was yielding to him the right of way were subjects of disputed evidence. So, too, the distance from the bridge when plaintiff warned Dannenberg, and whether Dannenberg heard such warning, and whether one of the women riding in defendant's car on noticing Dannenberg's car getting over on defendant's side of the road remarked "What is that fool trying to do,"—these and other details of evidence were developed at great length.

The jury returned a verdict for plaintiff, and answered a number of questions to which we must give space:

"1. How far was the front end of Henry Dannenberg's car on the bridge at the time of the collision? A. 8 feet.

"2. At what rate of speed was the car driven by Mr. Jasperson travelling at the following places:

(a) At the 'narrow bridge' sign? A. 40 to 45 miles per hour.

(b) At the west end of the bridge?  A.  35 miles per hour.

(c) At the time of collision?  A.  30 to 35 miles per hour.

"3.  Did plaintiff at any time warn Mr. Dannenberg of danger?  A.  Yes.

"4.  If you answer question No. 3 in the affirmative, then

(a) State of what such warning consisted?  A.  Stop, Henry, you can't make it.

(b) How far east of the bridge was it given?  A.  300 feet.

"5.  Did Dannenberg decrease his speed and if so, how far east of the bridge? A.  90 feet.

"6.  If you answer question No. 5 affirmatively did Dannenberg later increase his speed, and if so, how far east of the bridge did he so increase his speed?  A.  No.

"7.  If you answer question No. 6 affirmatively did plaintiff again warn Mr. Dannenberg of danger at or after the time of increase of speed?  A.  No.

"8.  If you find the defendant, Jasperson, guilty of any negligence which was the proximate cause of the collision, then state what he did that constituted such negligence?  State fully.  A.  Making no attempt to consider the other driver and not applying his brakes.

"9.  Which car reached the bridge first?  A.  Dannenberg's.

"10.  Was the car driven by Jasperson wholly on the south half of the road and bridge until just before the impact of the collision?  A.  Yes.

"11.  How far north of the south banister of the bridge was the left front wheel of the Dannenberg car at the time of the collision?  A.  3 feet.

"12.  Did the left side of the Dannenberg car cross to the south of the center line of the road just before entering the bridge?  A.  Yes.

"13.  Did Jasperson proceed across the bridge because it appeared to him that Dannenberg was giving him the right of way?  A.  No.

"14.  Would the cars have collided had the Dannenberg car remained at all times north of the center line of the road and bridge?  A.  No.

"15.  If you find for the plaintiff how much, if any, do you allow him for:

(a) Permanent injuries?  A.  $4,000.

(b) Pain and suffering?  A.  $875.

(c) Loss of time?  A.  $1,500.

(d) Medical expense?  A.  $625.

$7,000."

Defendant's motions for judgment on the special findings and the undisputed evidence, and to set aside certain findings, and for a new trial were overruled, and judgment rendered on the verdict.

Defendant appeals with a formidable assignment of errors, some of which will require critical attention.

'But first let us summarize the alleged negligence of the defendant creamery company and Jasperson, its employee.  The petition alleged that the bridge where the collision occurred was so narrow that two cars could not safely pass thereon except at very slow speed, and that Jasperson knew that fact; that both cars were visible to

their drivers at long distances before they met on the bridge, and that the danger of their passing on the bridge was apparent to each driver; that Jasperson neglected and failed to slacken his speed—

"And with full knowledge of all the facts aforesaid carelessly and negligently continued to drive his car at a high and dangerous rate of speed making no attempt to slow down but in such a manner as to meet the car of . . . Dannenberg, on said bridge, where the cars collided . . ."

It will be noted that the jury's findings 2 (a), (b), and (c) do not altogether support the allegation of the petition that Jasperson drove his car to the point of collision on the bridge at a high and dangerous rate of speed and that he failed to slacken his speed. The pertinent findings are that at the narrow bridge sign, which was 282 feet west of the bridge, Jasperson was driving at 40 to 45 miles per hour, and at the point of collision 30 to 35 miles per hour. So Jasperson did not continue his high and dangerous rate of speed—whatever it had been, but did slacken his speed some 10 to 15 miles per hour as he approached the point of collision. In this connection it will be noted that in its 8th finding, the jury found the proximate cause of the accident to be Jasperson's negligence in "making no attempt to consider the other driver and not applying his brakes." It is elementary that when various negligent acts are alleged against a defendant and the jury specifies the particular ground of negligence of which he is guilty, such specific finding acquits him of all other negligence charged in the petition. (*Jones v. A., T. & S. F. Rly. Co.,* 148 Kan. 686, 692, and syl. ¶ 2, 85 P. 2d 15; *Shepard v. Thompson,* 153 Kan. 68, 109 P. 2d 126.) And in respect to finding No. 8, that Jasperson made "no attempt to consider the other driver," it can hardly be said that such a finding was within the allegations of negligence charged in the petition, nor within the evidence, and is measurably inconsistent with finding 2 (a), (b), and (c). Defendant also argues that Jasperson's failure to apply his brakes was not an alleged ground of negligence. However, failure to slacken his speed was alleged, and doubtless the jury inferred, fairly we think, that in the short distance from the narrow bridge sign where Jasperson began to slacken his speed to the point of collision (327½ feet) a jury would be entitled to use their common knowledge that due care required a reasonable use of his brakes to effect a sufficient slackening of his speed under the circumstances. Defendant inveighs against finding No. 13, but we think it was within the issues and the evidence, and cannot be disturbed.

We come, however, to some findings of the jury of greater significance than those we have already noticed. Finding No. 10 says that the Jasperson car was wholly on the south half of the bridge until just before the collision. The bridge was 15 feet 8 inches wide. The south half of the bridge, in Jasperson's line of traffic was therefore 7 feet 10 inches wide. Jasperson's car had a width of 5 feet 8 inches, so it was feasible for his car and another no wider (Dannenberg's) to pass on the bridge without a collision if both cars were driven with due care. Now, noting findings 11, 12 and 14, the Dannenberg car had crossed over and into the path of the east bound line of traffic so that its left front wheel was only 3 feet from the south banister of the bridge at the time of the collision and that it had crossed to the south of the center line "just before entering the bridge." The jury's answer to the 14th special question is that if the Dannenberg car had remained north of the center line of traffic the collision would not have occurred. It will thus be seen that the jury's finding of proximate cause and defendant's negligence, finding No. 8, and its categorical answer in finding No. 14 are quite inconsistent with each other; and it is not possible to harmonize them both with the general verdict, even if finding No. 8 considered alone would support the verdict, which is debatable.

Where does this conclusion leave this lawsuit? The general verdict and judgment cannot stand in view of finding 14. Defendant moved for judgment on the special findings "and the undisputed evidence." We do not regard that motion as a clear-cut motion for judgment *non obstante veredicto*. Moreover, while the civil code authorizes the rendition of a judgment on the special findings where they are inconsistent with the general verdict (G. S. 1935, 60-2918) that rule implies that the special findings must be consistent with each other. In *Anderson v. Pierce*, 62 Kan. 756, 64 Pac. 633, it was held:

"Where the general verdict is in plaintiff's favor, and the special findings made by the jury are supported by the evidence and are inconsistent with one another, or consistent with one another and inconsistent with the general finding, but not destructive of plaintiff's right of recovery, a new trial should be ordered and not judgment entered for defendant."

In *Willis v. Skinner*, 89 Kan. 145, 130 Pac. 673, it was held:

"Consistent special findings control the general verdict when contrary thereto; but when they are inconsistent with one another—some showing a right to a verdict and others showing the contrary—the case is left in the condition of being really undecided, and a new trial should be granted."

Governed by the same rule of law were *Edwards v. Railway Co.,* 86 Kan. 257, 119 Pac. 872; *Underwood v. Fosha,* 89 Kan. 768, 133 Pac. 866; *Burnett v. Street Railway Co.,* 90 Kan. 282, 133 Pac. 534; *Roediger v. Railroad Co.,* 95 Kan. 146, 147 Pac. 837; *Green v. Hutson,* 139 Kan. 475, 32 P. 2d 490; *Whitacre v. State Bank,* 140 Kan. 106, 34 P. 2d 569; *Berry v. Weeks,* 146 Kan. 969, 973, 73 P. 2d 1086; *McGuire v. McGuire,* 152 Kan. 237, 103 P. 2d 884.

It therefore follows that the trial court did not err in overruling defendant's motion for judgment on the jury's special findings "and the undisputed evidence," but it seems clear that defendant's motion for a new trial should have been sustained.

The judgment is reversed and the cause remanded for a new trial.