No. 37,177

O. H. Giltner, *Appellant,* v. H. P. Stephens, *Appellee* and *Cross-appellant.*

(200 P. 2d 290)

Opinion filed November 30, 1948. 

*Jack L. Goodrich* and *A. L. Foster,* both of Parsons, argued the cause and were on the briefs for the appellant.

*Elmer W. Columbia,* of Parsons, argued the cause, and *John B. Markham* and *Herman W. Smith, Jr.,* both of Parsons, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages for injuries sustained by plaintiff as the result of alleged negligence of the defendant. Intervening matters are mentioned later but at the trial the jury returned a general verdict in favor of the plaintiff and answers to special questions submitted. The trial court sustained the defendant's motion for judgment on the answers to special questions, denied post-trial motions and rendered judgment in favor of the defendant. The plaintiff has appealed and specifies error in matters hereafter noted. The defendant has filed a cross-appeal from certain adverse rulings and specifies errors hereafter noted.

We note a previous appeal wherein the sufficiency of the defendant's answer was under consideration, and where the pleadings were reviewed (*Giltner v. Stephens,* 163 Kan. 37, 180 P. 2d 288). However, we shall here review the pleadings sufficiently to discuss the questions presented in this appeal.

In his petition plaintiff alleged that he was a trained and skillful carpenter of many years experience, and that defendant owned and operated a dairy farm; that in October, 1943, defendant orally hired plaintiff as a carpenter and agreed to construct a dairy barn and that construction started November 3, 1943, and plaintiff worked continuously on the structure until December 4, 1943; that on November 19, 1943, defendant provided a coservant, McDowell, who was about fifty years of age, totally deaf, with impaired speech, and it was necessary to make communications and instructions to him in writing; that McDowell was erratic and emotionally unstable and an incompetent coservant, which defendant knew; that plaintiff told defendant's employee, Moore, of McDowell's incompetency and Moore said he would report to the defendant; that on December 2, 1943, plaintiff told defendant that McDowell was incompetent and defendant said he would see about getting other help; that on December 4, 1943, defendant personally began work but was not competent to perform other than as a common laborer, which was

unknown to plaintiff; that about 2:30 o'clock p. m. of said day, plaintiff, defendant and McDowell were raising a large girder by means of a derrick or gin pole equipped with block and tackle, operated with a rope, all being completely described, and when the girder had been hoisted about nine feet above the ground and ready to be placed upon the wall where it was to rest, plaintiff then said, "Hold it," leaving defendant and McDowell holding the rope. Plaintiff then followed a described route toward a stepladder which he was to use in placing the girder on the wall and heard defendant call, "Look out." Plaintiff looked up and saw the rope running through the pulleys, the girder fell and he sustained serious injuries. Then follow allegations which will be mentioned later when discussing the doctrine of res ipsa loquitur. The petition alleges further that defendant personally and by his employee McDowell negligently turned loose of the rope holding the girder so that the girder fell upon plaintiff, and that defendant was negligent in hiring McDowell when he knew McDowell was incompetent because of deafness and instability, in retaining McDowell when defendant knew of McDowell's condition, in undertaking to assist plaintiff when defendant knew he was incompetent, in turning loose of the rope holding the girder, and in failing to provide competent coservants. Allegations concerning injuries received need not be noted.

Defendant's demurrer to the above petition was overruled and he answered, alleging his version of plaintiff's employment, the hiring of McDowell and that the derrick being used was constructed by the plaintiff and that the block, tackle and rope used thereon were the property of the plaintiff, and that plaintiff had full charge thereof; that previous to the accident, plaintiff and McDowell had placed a number of girders; that on December 4, 1943, plaintiff and McDowell had raised the girder about six feet and plaintiff requested defendant to assist in pulling on the rope and that the girder was by the three of them lifted to about nine feet; that plaintiff then instructed defendant and McDowell to hold the rope while he put the girder in place, and when plaintiff reached a point under the girder a knot plaintiff had tied in the rope on the block and tackle became untied and the girder dropped on plaintiff. Allegations concerning plaintiff's failure to use the derrick or gin pole in a good and safe manner need not be set forth in detail. Defendant alleged that the only connection he had with the operation was at the request and direction of the plaintiff. He denied any liability for the

reasons: (1) That plaintiff was the owner of the block and tackle and had constructed the derrick, that plaintiff tied the knot which came untied, that plaintiff was in charge of the work, and assumed the risk of the girder's falling; (2) that the injury was not caused through any negligence of defendant, but through the failure of the knot tied by plaintiff; (3) that plaintiff assumed the risk of the acts of his coservant McDowell; (4) that the injury was caused by plaintiff's walking under the suspended girder; (5) that the injury was caused by plaintiff's negligence in the operation of the derrick or gin pole; and (6) that plaintiff's own negligence was the proximate cause of his injuries. Plaintiff filed a reply consisting of a denial of new matter and a series of specific denials.

The following matters occurring during the course of the trial will be discussed later: (1) Defendant's objection to the introduction of any testimony and motion for judgment on the pleadings and the opening statement because of failure to allege or state facts sufficient to warrant further proceeding; (2) defendant's motion, at the close of the evidence, for a directed verdict in his favor; (3) plaintiff's motion to compel defendant to elect between inconsistent defenses; (4) plaintiff's objection to instructions.

As a result of the trial the jury returned a general verdict for the plaintiff for $4,000 and answered special questions submitted as follows:

"1. Do you find that the rope on the block and tackle came loose on the lower block causing the girder to fall? A. No.

"2. Do you find that the knot in the rope in the lower block came untied? A. No.

"3. Do you find that plaintiff either stepped or placed himself under the girder while it was suspended in the air? A. Yes.

"a. If you answer the foregoing in the affirmative, was plaintiff exercising ordinary care for his own safety under the circumstances? A. Yes.

"4. How high was the girder at the time plaintiff stepped under the same? A. 8 to 9 feet.

"5. Do you find the defendant H. P. Stephens guilty of negligence? A. Yes.

"a. If you answer the foregoing question in the affirmative, state what act of negligence you find him guilty of. A. By retaining McDowell on the job.

"6. What caused the girder to fall? A. Not known.

"7. Could plaintiff have walked around the girder and thus avoided injury? A. Possible.

"8. Do you find that the injuries suffered by the plaintiff were the result of an accident? A. Yes.

"9. When the girder was raised to its proper height could plaintiff have placed the girder without walking under same? A. Possible.

"10. Do you find that the plaintiff tied the knot in the rope on the lower block? A. Yes."

Within time the plaintiff filed his motion for a new trial and his motion that the answers to special questions be set aside, and the defendant filed his motion for judgment on the answers to the special questions notwithstanding the general verdict. As has been mentioned earlier, the trial court denied plaintiff's motions, sustained defendant's motion, and rendered judgment in favor of the defendant, and the appeal of the plaintiff and the cross-appeal of defendant were timely perfected.

For the reason that if the contentions raised in the cross-appeal of defendant be sustained the entire matter would be fully adjudicated, we shall first notice the cross-appeal, wherein it is specified the trial court erred in (1) overruling demurrer to plaintiff's petition; (2) in overruling his objection to the introduction of any testimony and his motion for judgment on the pleadings and the opening statement of the plaintiff; and (3) in denying defendant's motion for a directed verdict at the close of the evidence.

In his brief the defendant contends at length that his motion to have the petition made more definite and certain having been successfully resisted by the plaintiff, the petition is now to be strictly construed. The record refers to but does not set forth the motion which apparently was directed only at alleged acts of negligence of McDowell and not of the defendant. But without dwelling on the application of the rule contended for, we note the following. The gist of the argument is that the allegations of the petition disclose that the relationship of fellow servants existed between plaintiff and McDowell and that plaintiff assumed the risk of negligence of McDowell. We shall not discuss that at this time for the petition also charges the defendant with negligence in that he "personally . . . turned loose of the rope holding said girder so that it fell upon plaintiff." Even though the defendant be correct as to the fellow-servant rule, the petition stated a cause of action under the allegation noted.

Insofar as defendant's objection to the introduction of evidence and the motion for judgment on the pleadings and opening statement are concerned, we observe that there was nothing stated by plaintiff's counsel in his opening statement that precluded any right of recovery on defendant's specific personal negligence. (*Speer v.*

*Shipley,* 149 Kan. 15, 17, 85 P. 2d 999; *Northington v. Northington,* 158 Kan. 641, 643, 149 P. 2d 622; and *Greep v. Bruns,* 160 Kan. 48, 59, 159 P. 2d 803, and cases cited therein.) The motion for judgment on the pleadings raised only the same question as the demurrer to the petition. In view of what is said in the preceding paragraph, the objection to the introduction of testimony was properly overruled.

The ruling on the defendant's motion for a directed verdict must be sustained. Under well-accepted rules the trial court was bound to give the plaintiff a favorable interpretation of his evidence and was not to weigh differences between direct and cross-examination, and it was immaterial there was evidence adduced either by plaintiff or defendant from which a contrary conclusion could have been drawn. Plaintiff testified that he knew what caused the girder to fall and that, "They turned it loose, and let it fall on me."

Defendant's cross-appeal cannot be sustained as to any part thereof.

Plaintiff's first specification of error is that the trial court erred in giving three particular instructions to the jury and in refusing to give instructions requested by him covering the same subject matter. In defendant's brief is a statement that the abstract shows no objection or exception to the instructions as given. The omission is supplied in plaintiff's brief. It is also observed that if plaintiff's contentions are correct, the instructions given were contrary to those requested. In such case, the questions are properly before us. (*Lukens v. First National Bank,* 151 Kan. 937, 101 P. 2d 914; *Snedker v. Derby Oil Co., Inc.,* 164 Kan. 640, 192 P. 2d 135.)

Plaintiff first directs attention to instruction No. 4, wherein the trial court defines the term "contributory negligence" as "neglect of the duty imposed upon all men to observe ordinary care" and complains the definition is incomplete and therefore erroneous. The quoted language, and other language used in immediate connection, should not be isolated to determine correctness of its content. In instruction No. 3 the court informed the jury that it was important for them to have a correct understanding of what was meant by negligence and contributory negligence and it first defined negligence in language of which no complaint is made. After referring to elements making up and showing negligence, the court in instruction No. 4 told the jury the plaintiff could not recover if his injury resulted from his own negligence or contributory negligence

and it then defined the last term in the language above quoted. Perhaps it would have improved the instructions to have placed the definitions closer together. Under general rules of construction, instructions must be construed together and if taken as a whole they properly state the law, they are sufficient. (See West's Kansas Digest, Trial, § 295; Hatcher's Digest, Trial, § 185.) Applying that rule, we cannot say that instruction No. 4 was erroneous or that the trial court erred in not giving the instruction in the language requested by plaintiff.

Plaintiff complains of instruction No. 9, which deals with assumption of risk. It may be observed that such assumption was one of defendant's pleaded defenses, and that plaintiff had requested an instruction thereon. In considering this complaint, it is to be borne in mind that plaintiff not only charged defendant with negligence in hiring McDowell, allegedly incompetent, and in retaining him on the job, but he further charged that the defendant personally and by McDowell turned loose of the rope holding the girder, the fall of which injured him. Plaintiff's evidence was to the effect that both McDowell and defendant held the rope and that while one of them could have held the girder in its lifted position, both let loose of the rope. There was no room to differentiate between what McDowell did and the defendant did at the time of the fall of the girder.

The instruction consists of three long paragraphs and will not be quoted here. Plaintiff's complaint is that the instruction as given did not include any reference to his testimony and his claim that defendant had promised to discharge McDowell and to remedy the hazard created by his continued employment and to hire competent coservants, and that if the jury found the above as facts, then plaintiff had a right to rely upon defendant's promise and plaintiff could then, in the exercise of ordinary care, continue to work for a reasonable time, and in so doing he would not have assumed the risk of employment. In support he relies principally on *Railway Co. v. Loosley,* 76 Kan. 103, 114, 90 Pac. 990. His contention is not warranted by his own evidence. Without detailing all of it, plaintiff's principal complaint against McDowell was that he was deaf and it was necessary to give him instructions in writing and he wouldn't understand and would resent anything that wasn't the way he, McDowell, wanted it. McDowell worked as a common laborer; that on a date not shown plaintiff told defendant it was impossible to work

with McDowell and defendant told him he couldn't get help and for plaintiff to look around and see what he could do; that on November 23 plaintiff told defendant he could get two men at $5 per day but defendant said he would not pay that when he could hire a man at $2.50 a day; that following that conversation he continued to work with McDowell; that on December 4, he loaded his tools and said he was leaving, when defendant came up and said he was taking supplies to some men in the field and after he had gone there he would come back and help, and after that statement he continued to work, and the three worked together until the accident. It thus appears that when plaintiff proceeded with the work on the day of the accident there had been no promise or other holding out by defendant that he would discharge McDowell; plaintiff proceeded to work with McDowell when he was fully aware of McDowell's alleged incompetency and he continued working with him—the mere fact that defendant came on and assisted with the work did not affect plaintiff's knowledge nor alter the situation. The instruction complained of was not erroneous under plaintiff's own theory of the case as stated in his pleadings, nor under his evidence.

Plaintiff also complains of instruction No. 11, the purport of which is that under the evidence plaintiff assumed the risk incident to the hazard and danger of working with his fellow employee McDowell, and that the jury cannot find for the plaintiff and against the defendant upon any act of negligence of his fellow employee. In view of our conclusion, it is not necessary we discuss what may be included in the term "assumption of risk" nor what may constitute ordinary risks which are assumed or extraordinary or unusual ones which are not. Those matters may be found treated fully in texts and encyclopedias dealing with the subject of master and servant. As we view the matter, instruction No. 11 was a concomitant of instruction No. 9 and the two must be considered together. In *Lively v. Railway Co.,* 115 Kan. 784, 225 Pac. 103, it was not entirely clear whether the plaintiff sought damages at common law or under the federal employers' liability act. The court first discussed the doctrine of assumption of risk under the latter act, and then said:

"Even under our local jurisprudence, the assumption of the usual risk of an employment is not ordinarily a jury question." (citing cases) (l. c. 788.)

No contention is made in the instant case that the risks involved were other than the usual risks of the employment, and the trial

court properly ruled the matter as one of law. It did not err in its instruction No. 11.

Plaintiff presents his specifications of error No. 2 and No. 4 together. No. 2 is that the trial court erred in overruling his motion to vacate and set aside the answers to special questions and in sustaining defendant's motion for judgment on those answers. No. 4 is that the trial court erred in denying plaintiff's motion for a new trial. Plaintiff's motion to set aside the answers to special questions was for the reason the answers were irreconcilable and inconsistent with each other, were contradictory in matters material to the issues in the case, and were not supported by the evidence. It may here be observed that an answer to a special question may not be set aside merely because it is inconsistent with the general verdict (*Craig v. Sturgeon*, 151 Kan. 208, syl. ¶ 3, 98 P. 2d 139). No reason appears why the same rule should not apply if various answers are inconsistent with each other, and whether they were in this case and the effect if they were, is discussed later. No particular argument is made that the answers returned are not supported by the evidence. An examination of the record, as abstracted, discloses that while there was testimony from which different conclusions might have been reached, there was testimony which supports the answers made by the jury. The trial court did not err in refusing to set aside the answers.

Before discussing the ruling on defendant's motion for judgment on the answers to special questions, we notice rules of law applicable. A general verdict imports a finding upon all the issues of the case not inconsistent with the special findings, and such special findings are to be given such a construction, if possible, as will bring them into harmony with the general verdict. If, however, the special findings cannot be reconciled with the general verdict, and are sufficiently full and complete in themselves, and are not inconsistent in themselves, judgment must follow the special findings. (*Marley v. Wichita Transportation Corp.*, 150 Kan. 818; 96 P. 2d 877; *Craig v. Sturgeon*, supra; *Packer v. Fairmont Creamery Co.*, 158 Kan. 191, 146 P. 2d 401; and *Lord v. Hercules Powder Co.*, 161 Kan. 268, 167 P. 2d 299, and cases cited therein.)

Plaintiff's contention, broadly speaking, is that the answer to question No. 6 is not inconsistent with the general verdict, and that that answer and the answer to question No. 8 are inconsistent with each other. It may first be observed that in his petition plaintiff

charged that defendant was negligent in hiring McDowell, an incompetent workman, in retaining McDowell on the job, in personally undertaking to assist the plaintiff, in turning loose of the rope holding the girder and causing it to fall and in failing to provide competent coservants, all as more particularly noticed earlier in this opinion. By its answer to question No. 5 the jury found defendant guilty of negligence only by retaining McDowell on the job, and by that finding it acquitted defendant of every other act of negligence charged (*Haley v. Kansas City Public Ser. Co.*, 154 Kan. 477, 119 P. 2d 449) unless some other answer supplied the omission (*Harshaw v. Kansas City Public Ser. Co.*, 154 Kan. 481, 484, 119 P. 2d 459). Under the issues presented the burden was upon the plaintiff to establish negligence of the defendant that was the proximate cause of plaintiff's injuries, and it is clear from the evidence and the answer to question No. 5 that retention of McDowell was not such a proximate cause. Although not so stated, plaintiff seems to recognize that unless he is correct in his contention now to be discussed, that the answer to question No. 6 compels a judgment against him. Plaintiff directs attention to *Moeser v. Lewis*, 68 Kan. 485, 75 Pac. 512. That action was one by an employee against his employer to recover for injuries received by the falling of the employer's crane. The jury, answering a special question, found there was no direct evidence of what caused the injury. This court said that that fell short of saying there was no evidence whatever to sustain the general verdict, and that there was an abundance of evidence describing defects in the mechanism of a crane which fell on plaintiff, and that by its general verdict the jury drew the conclusion that one or more of these defects caused the crane to fall; that the evidence warranted such a conclusion and the jury was authorized to draw it. A reference to that opinion, where the questions and answers are set forth, shows that the crane was in unsafe condition when handled with ordinary care. That case presented a different situation than now confronts us. The issue in this case was whether a knot tied by plaintiff became untied, or whether defendant let go of the rope. The jury found by one answer that the knot did not become untied, but they refused to find that defendant let go of the rope, and that answer must be construed against the plaintiff. See *Darrington v. Campbell*, 150 Kan. 407, 94 P. 2d 305, and cases cited, and *Haley v. Kansas City Public Ser. Co.*, supra. *Craig v. Sturgeon*, supra, cited by plaintiff on this point, presented a situation clearly

distinguishable from that presented by the instant case. So construed the answer to question No. 6 precludes recovery by him, for he failed in an essential part of his proof.

Plaintiff's contention that the answers to questions Nos. 5 and 8 are inconsistent with each other, cannot be sustained. At the request of plaintiff the trial court instructed on accident, and no objection to the submission of the special question appears in the abstract. The answer to question No. 5 fixed defendant's negligence as retaining McDowell on the job. As has been observed that was not the proximate cause of the accident—the proximate cause was defendant's letting go of the rope, a cause which the jury refused to find by its answer to question No. 6. The answer to question No. 8 was that plaintiff's injuries were the result of an accident, a matter later discussed. That conclusion is consistent and not inconsistent, not only with the answer to question No. 5 but with the other answers returned.

It follows from the above that the trial court did not err in not granting a new trial for the asserted reason the answers returned by the jury were inconsistent with each other and could not be reconciled.

Plaintiff's third specification of error is that the trial court erred in denying his motion to compel the defendant to elect on which of his inconsistent defenses he would rely. Plaintiff directs our attention to *Pinegar v. Webster,* 145 Kan. 44, 64 P. 2d 546, and *Harmon v. Coonrod,* 148 Kan. 146, 79 P. 2d 831. In the more recent case of *Phillips v. Hartford Accident & I. Co.,* 157 Kan. 581, 142 P. 2d 704, it was held:

"The test of inconsistency in defenses is whether proof of one necessarily disproves the other." (Syl. ¶ 1.)

On the former appeal of this case this court recognized the rule but refrained from expressing an opinion as to whether defenses pleaded were inconsistent within the rule. No cases dealing with a situation such as the instant case presents are cited, but we note application of the rule in the following instances.

In *De Lissa v. Coal Co.,* 59 Kan. 319, 52 Pac. 886, where the action was on contract, it was held that a defense under a general denial and a defense that the contract was induced by fraud were not inconsistent. Reference is made to the opinion for the reasoning thereof. In part, it was said:

"It was allowable to the defendant to say: 'The obligation sued upon is not mine, and was not executed on my behalf, and the one who executed it had no authority to bind me by its terms; but, if such be not the case—if it be that the obligation was executed by my agent and on my behalf—he was fraudulently induced to enter into the contract." (l. c. 325.)

In *Light Co. v. Waller*, 65 Kan. 514, 70 Pac. 365, it was held that negligence was not admitted by a general denial followed by a plea of contributory negligence and that a general denial and a plea of contributory negligence were not inconsistent.

In *Brownlee v. Bliesner*, 120 Kan. 145, 242 Pac. 453, it was held a denial of the existence of indebtedness and an allegation that if defendant ever owed the plaintiff the debt had been fully paid, did not present inconsistent defenses. It was further said it was competent for the defendant to form his pleadings so as to meet the possible conditions and contingencies that his opponent might prove.

In *Railroad Bldg., Loan & Savings Ass'n v. Grayum*, 136 Kan. 418, 15 P. 2d 405, a bank filed an answer and cross-petition, alleging as against the building and loan association an agent had authority to endorse a check, and as against another bank the agent did not have such authority and asking for a determination of the rights of the parties. It was held that construed as a whole the pleading did not adopt inconsistent positions.

In *Pinegar v. Webster*, supra, it was held that defenses that a note was a forgery and that it was procured by fraud were inconsistent, because proof of one disproved the other. In that case may be found a review of authorities.

In *Harmon v. Coonrod*, supra, an action to recover on a purchase contract, it was held the defendant should have been compelled to elect whether he stood on his general denial and cross action for damages, or on his plea of rescission.

In considering plaintiff's contention that the defendant was relying upon inconsistent defenses, it is to be borne in mind that plaintiff's testimony had shown that he built the derrick; that he owned the block and tackle; that he fastened the rope to the lower block; and that he had testified that after the girder was raised and while he was preparing to put it in position, defendant let go of the rope causing it to fall. Defendant did offer testimony that the knot tied by plaintiff became untied. When plaintiff made his motion to compel the election neither party knew whether the jury would credit his evidence, nor whether it would, as it did, give credit to

neither version. Plaintiff does not complain of the correctness of the instruction as to accident later given the jury. He does, in connection with his argument, direct attention to the definition of unavoidable accident in *State v. Hansford,* 76 Kan. 678, 92 Pac. 551, that it is:

". . . an undesigned contingency; a happening without intentional causation; that which exists or occurs abnormally; something unusual or phenomenal; an uncommon occurrence." (1. c. 685.)

In a very technical sense, it may be said that if defendant proved the knot became untied, he disproved accident. But that is not necessarily so. His version might not be accepted. No one contends or would contend that plaintiff would tie the knot in such manner that it would become untied, and yet it might do so—if it did it would be a happening without intentional causation, something unusual and an uncommon occurrence. It was obvious at the close of the evidence that the version of plaintiff and the version of defendant were irreconcilable, and that possibly both versions were wrong, and that plaintiff was injured by the happening of an event of which the defendant was not responsible and over which he had no control, with a result that was undesigned and unexpected so far as either plaintiff or defendant was concerned. The situation is analogous to that where a defendant denies negligence and pleads negligence of the plaintiff.

We conclude that the two matters of defense were not such that proof of one necessarily disproved the other, and that the trial court did not commit reversible error in denying the motion.

We note plaintiff's contention that the doctrine of *res ipsa loquitur* applies. Without following through the pleadings, the fact defendant did not move to require him to elect and other pertinent matters, the following appears: The plaintiff built the derrick being used, he owned the block and tackle, he prepared the girder for lifting, he assisted in the lifting and he testified positively as to the cause of its fall. Without here setting forth any definition of the doctrine, our decisions make it clear that an essential element to the application of that doctrine is that it must appear that the instrumentality which produced or caused the injury complained of was, at the time of the injury, under the sole and exclusive control and management of defendant. If for no other reason, the factual situation disclosed shows that the doctrine should not be

applied. See *Sipe v. Helgerson,* 159 Kan. 290, 153 P. 2d 934; *Stroud v. Sinclair Refining Co.,* 144 Kan. 74, 58 P. 2d 77; and *Mayes v. Kansas City Power & Light Co.,* 121 Kan. 648, 249 Pac. 599. Cf: *Truhlicka v. Beech Aircraft Corp.,* 162 Kan. 535, 178 P. 2d 252.

Our consideration of the appeal leads to the conclusion that the judgment must be, and it is, affirmed.

SMITH and COWAN, JJ., dissent.