No. 34,987

LORETTA C. SHEPARD, as Widow, and as Next Friend and Natural Guardian of DOROTHY SHEPARD, CAROL SHEPARD, and HARDENE SHEPARD, Minors, *Appellee,* v. GUY A. THOMPSON, Trustee of the Missouri Pacific Railroad Company, *Appellant.*

(109 P. 2d 126)

Opinion filed January 25, 1941.

*Arnold C. Todd, Kurt Riesen,* both of Wichita, *W. P. Waggener, O. P. May, B. P. Waggener* and *Ralph M. Hope,* all of Atchison, for the appellant.

*C. A. Matson, I. H. Stearns* and *E. P. Villepigue,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HOCH, J.: This is a railroad crossing case. The husband of the appellee was killed when the car in which he was riding ran into the side of a moving passenger-train engine at a grade crossing in the city of Wichita. Appealing from the judgment against it, the railroad's principal contention is that the collision resulted from the negligence of the deceased and the driver of the car and that upon the jury's answers to special questions judgment should have been entered for the defendant notwithstanding the general verdict for the plaintiff.

The collision took place about 12:15 a. m. on December 4, 1938, where the Missouri Pacific tracks cross Walnut street, several blocks west of the Arkansas river and a block north of Douglas avenue, the main business street of the city. The passenger train was proceeding west on Pearl street and the car involved in the accident was going south on Walnut. The driver and owner of the car, a 1935 Chevrolet coupé, was E. L. Potter. Riding with him were Harold Byerly and Harvey A. Shepard, husband of the appellee. Shepard was seated between Potter and Byerly. The car struck the right side of the engine, described by one of plaintiff's witnesses as "about ten feet from the front of the engine" and by the engineer and fireman as "about fourteen or fifteen feet from the pilot of the engine." After the collision the car was lying on the sidewalk on the west side of the street.

The negligence alleged in the petition consisted of operating the train at a speed of twenty-five miles an hour contrary to a city ordinance which provides a maximum speed of fifteen miles within the city; of failing to blow a whistle or ring a bell or give other warning signal of the approach of the train; of failing to maintain sufficient warning signs at the intersection; and of failing to maintain some kind of electric bell, wigwag or other such warning de-

vice—the crossing having, it was alleged, "an extremely dangerous condition and situation surrounding" it.

The answer consisted of a general denial and an allegation that the deceased and the other occupants of the car were guilty of contributory negligence by their failure to stop, look and listen for trains and their failure to use proper care and caution as they approached the crossing.

The jury returned a verdict for the plaintiff in the sum of $6,625 and answered special questions as follows:

"1. If you find for the plaintiff, then state at what rate of speed (a) the automobile approached the crossing; (b) the train approached the crossing. A. (a) 18 to 20 miles per hour. (b) 15 miles per hour.

"2. If you find for the plaintiff, then state whether or not the automobile stopped before going into the train. A. No.

"4. If you find for plaintiff, then state whether or not the occupants of the automobile saw the train before it was struck. A. No.

"7. If you find for the plaintiff, then state specifically what, if any, negligence you find against the defendant. A. Failure to provide adequate warning signals.

"8. If you find for plaintiff, then state how far east of the crossing could an approaching train have been seen by the deceased—

"(a) When he was within 20 feet of the middle track. A. 2 blocks.

"(b) When he was within 25 feet of the middle track. A. 1¾ blocks.

"(c) When he was within 30 feet of the middle track. A. 1¾ blocks.

"(d) When he was within 40 feet of the middle track. A. 200 feet.

"(e) When he was within 50 feet of the middle track.´ A. 100 feet.

"9. If you find for plaintiff, then state how far north of the crossing the cross-arm sign or signs could be seen by the occupants of an automobile approaching the crossing at night with headlights burning. A. 60 feet.

"10. If you find for plaintiff, then state from how far north of the crossing the railroad crossing could be seen by the occupants of an automobile who knew it was there, when approaching the crossing at night with headlights burning or by occupants of an automobile not knowing that the crossing was there when approaching the crossing at night with headlights burning. A. (a) 60 feet; (b) 30 feet."

Brief statement of the facts will suffice. Harvey Shepard was a machinist 38 years of age who had been employed for a number of years by the Federal-Mogul Corporation at 200 North Waco street in Wichita, which is a few blocks from the scene of the collision. He had resided at 1517 South St. Francis street in Wichita for about six years and prior to that he had lived north of Douglas, on North Clark, north of Pearl street. He was familiar with the location of the Missouri Pacific tracks and had crossed them many times. On the evening of December 3, 1938, he came home from

work at five o'clock and after supper he and Mr. Byerly joined Mr. Potter—a brother-in-law—at a pool hall on west Douglas, where they spent the evening playing pool. About 11:15 or 11:30 p. m. they left the pool hall, and went to the Potter car which was parked a block or so away. Potter testified that they drove out west First street and west Second street to go to his home to get some things, as he was intending to stay at the Shepard home that night. They turned south on Walnut street, which is eighty feet wide, with a paved portion thirty feet wide. Walnut is not an arterial highway. Seneca street, the first north-and-south street west of Walnut, is a through street with electrically operated flash signals.

Potter, the driver and owner of the car, had lived in Wichita for about twenty years and worked for the same company and at the same place with Shepard. He had crossed this crossing several times and knew it was there. He testified that the window of his car was down, that he did not hear any whistles blowing or bells ringing, that he did not see the train at all and made no effort whatever to stop. He had driven an automobile about twenty-five or thirty years.

The engineer testified that the automatic engine bell had been ringing since the train left the depot a few blocks east of the scene of the accident and that he commenced blowing the whistle two blocks before reaching the crossing. The fireman gave like testimony. The engine headlights were burning—that was the uncontroverted testimony and there was no allegation in the petition that they were not burning. Two witnesses who were walking north on Walnut about three-quarters of a block south of the crossing testified they saw the headlight of the approaching train and heard the whistle and the bell ringing. They testified that they saw the Potter car coming from the north and that one of them remarked to the other that if the car didn't slow down it would hit the train. They did not see the crash because they were on the south side of the train, but ran around to the north side and one of them called the ambulance. In view of the findings of the jury this and other testimony need not be narrated in detail.

The defendant's negligence, specified, *supra*, by the jury was: "Failure to provide adequate warning signals." Admittedly this refers to warning signs on the street. Under the rule frequently announced, this absolved the defendant from the other allegations of

negligence contained in the petition. (*Jones v. A. T. & S. F. Rly. Co.,* 148 Kan. 686, 692, 85 P. 2d 15, and cases therein cited; *Rathbone v. Railway Co.,* 113 Kan. 257, 259, 214 Pac. 109; *Roberts v. Railway Co.,* 98 Kan. 705, 161 Pac. 590.)

What then is the situation with which we must deal under the admitted facts and the answers of the jury? The west-bound train was traveling at a lawful speed of fifteen miles an hour. The whistle had been blown and the engine bell was ringing. The headlights were burning and must have been shining across the Walnut street intersection, which appellee alleges was poorly lighted—described by counsel as "almost a blackout." The automobile, coming from the north, approached the tracks at a speed of eighteen or twenty miles an hour. The crossing signs could be seen sixty feet away. The jury found that the crossing itself—evidently referring to the tracks—could be seen sixty feet away by an occupant of the car "who knew it was there" and thirty feet away if he did not know it was there. The latter answer is difficult of logical analysis, but we accept it for what it says. Potter, the driver, testified that he knew there was a crossing there. Shepard had lived in the city many years, worked at a place a few blocks from the Walnut street intersection, and appellee, his wife, testified that she "supposed" she had been over the crossing with her husband and that she had been over other crossings on the same railroad track in west Wichita. But giving appellee the benefit of any possible doubt, we assume that the crossing track itself could only be seen by the deceased at a distance of thirty feet. However, when the auto was fifty feet from the tracks the occupants could see a train 100 feet east of the crossing and at forty feet from the tracks a train 200 feet east of the crossing could be seen. When the auto was *fifty* feet from the track the front of the engine had already entered the intersection. This is obvious from the fact that although the train was traveling slower than the auto, the front end of the engine was at least fifty feet from the east line of the street when the collision took place. The street is eighty feet wide and the engine was struck at least ten feet back of the front end. Had train and auto been traveling at the same rate of speed the engine would have just been entering the intersection when the auto was fifty feet from the crossing. When the auto was *forty* feet from the crossing the front end of the engine was seventeen to twenty feet inside the intersection—this appears from a simple mathematical calculation based on the findings of

the jury. Moreover, these computations are based on an assumption, favorable to appellee, that the auto was traveling in the center rather than on the right and proper side of the street. If the auto was traveling in the right-hand lane it follows that the engine was still farther within the intersection than above indicated.

While the jury made no finding on the subject, the undisputed testimony of a police officer in the city traffic department was that under the conditions shown as to tires, condition of the pavement, etc., a car traveling at twenty miles an hour could stop in forty feet, allowing for the normal period of mental reaction before applying the brakes. And of course this computation is based on the assumption that the driver of the auto would proceed straight ahead and would not turn the steering wheel—the normal and natural thing to do—and thus greatly lessen the forward distance he would travel toward the point of collision. These evident facts conclusively show that with the engine and a large part of the train in full view when the driver was ample distance away to avoid a collision he made no effort to stop and drove his auto squarely into the side of the engine.

Whether the finding of the jury that the appellant was negligent in not providing adequate warning signs at this crossing is supported by substantial evidence we need not determine. The principal argument of the appellee in this regard is that the cross-arm warning signs were located on the wrong side of the street, the one on the north side of the track being on the east side of the street and the one on the south side of the track being on the west. While there is force in the contention that these signs should have been otherwise located, the jury found that the occupants of the car could see the cross-arm signs sixty feet north of the crossing. However, regardless of where they might be located, it does not appear how a crossing sign would have prevented the accident if the occupants did not see a slow-moving train, with headlight burning, right there before them.

Electric signals are not required by state statute at all crossings, nor in this instance had the State Highway Commission or the city of Wichita made requirement that there be one at the Walnut street crossing. (See *Sheets v. Baldwin*, 146 Kan. 596, 598, 73 P. 2d 37; G. S. 1935, 68-414.)

We have carefully examined all the cases cited by both appellee and appellant, as well as others, and find no authority to support

recovery upon the facts shown in this case. The purpose of crossing signs or signals is to warn of approaching trains. Assuming, in harmony with the finding, that the railroad company had not provided adequate signs at the crossing, it is apparent that the proximate cause of the accident was that the driver of the auto drove his car into the side of the engine, although much of the train was in plain view, and the engine had entered the intersection at least seventeen to twenty feet while there was yet time to avoid the collision if the occupants had been looking ahead. Under such circumstances there can be no recovery. (See *Bledsoe v. M.-K.-T. Rld. Co.*, 149 Kan. 741, 90 P. 2d 9, and cases therein cited.)

Appellee calls our attention to the case of *Harwood v. Mo. Pac. Rld. Co.*, 118 Kan. 332, 234 Pac. 990. But in that case the jury found that the plaintiff was keeping a lookout ahead knowing that somewhere in that vicinity he would have to pass over the defendant's tracks in order to reach his destination; that there was no crossing sign and the crossing was obscured by mud and weeds; that the engine whistle was not sounded for the crossing; that the plaintiff approached the crossing at ten miles an hour, while the train approached it at thirty-five miles an hour. Moreover, in that case the auto was struck by the train and not the train by the auto. Other cases cited by appellee are in no way persuasive here and it would needlessly extend this opinion to discuss them.

Only brief comment need be made upon the fact that the deceased, husband of the appellee, was not the driver of the auto. The rule is well established in this state that a guest or passenger in an automobile is under a duty to exercise reasonable care and precaution for his own protection, that he cannot recover damages if he fails to exercise such precaution and to give warning to the driver of an imminent danger. (*Buchein v. Atchison, T. & S. F. Rly. Co.*, 147 Kan. 192, 75 P. 2d 280; *Hooker v. Missouri Pac. Rld. Co.*, 134 Kan. 762, 8 P. 2d 394; *Blue v. Atchison, T. & S. F. Rly. Co.*, 126 Kan. 635, 270 Pac. 588; *Ewing v. Railroad Co.*, 117 Kan. 200, 206, 231 Pac. 334; *Cooper v. Railway Co.*, 117 Kan. 703, 709, 232 Pac. 1024; *Rathbone v. Railway Co.*, 113 Kan. 257, 259, 214 Pac. 109; *Knight v. Railway Co.*, 111 Kan. 308, 206 Pac. 893; *Kirby v. Railway Co.*, 106 Kan. 163, 186 Pac. 744.) In the instant case the jury answered that "the cross-arm sign or signs" could be seen "by the occupants of an automobile" for sixty feet north of the crossing, and there is nothing in the record to indicate that the deceased could not

see the engine and the train as well as could the driver. There is no testimony that either he or Byerly, the other occupant—who was not called as a witness—gave any warning in an effort to avoid the collision. Whether they were so engrossed in conversation that they were oblivious to other matters or what the explanation is would be mere speculation.

Considerations of sympathy are felt by appellate as well as by trial courts, but real as such sympathy is in the instant case for the bereaved plaintiff and her family, the conclusion is here inescapable that recovery is barred and that defendant's motion for judgment notwithstanding the general verdict for the plaintiff should have been sustained. This conclusion makes it unnecessary to discuss the appellant's other assignments of error.

The judgment is reversed and the case remanded with directions to enter judgment for the defendants.