Eleanor TAYLOR, a Minor by William Taylor, Next Friend, Plaintiff-Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, and Francis X. English, Defendants-Appellants.

Nos. 31648, 31649.

St. Louis Court of Appeals.

Missouri.

Sept. 25, 1964.

Evans & Dixon, William W. Evans, St. Louis, for defendant-appellant Francis X. English.

Donald W. Bird, St. Louis, for defendant-appellant St. Louis Public Service Co.

Sherman Landau, St. Louis, for plaintiff-respondent.

BRADY, Commissioner.

Defendants appeal from a judgment for $15,000.00 entered upon a jury verdict in plaintiff's favor in an action brought to recover for personal injuries she suffered as a result of being struck by an automobile driven by the defendant English. The allegations of prejudicial error here involved have reference only to the trial court's action in giving certain instructions and in refusing to give others offered by the defendant company. The factual statement will be limited to those issues.

The plaintiff was upon the public sidewalk near the northwest corner of the intersection of Page and Academy avenues in the city of St. Louis when she was struck. The issue actually tried was which defendant was to blame for the collision in which they were involved and which had resulted in the English automobile coming upon the sidewalk and striking the plaintiff. The defendant English contended that he had parked his automobile along the north curb of Page just east of a bus stop zone. This zone extends eastwardly about 90 feet from the northeast corner of the intersection. Page runs east and west and when he saw his passengers come out of the church located on the northwest corner of this intersection, he drove westwardly into and partially through the bus stop zone, intending to turn right at Academy and pick them up. He was driving in the lane next to the north curb. When he was about half way through the bus stop zone, his automobile was struck at the left rear fender by the defendant company's westbound bus. The impact caused his speed to increase. His automobile was knocked to the right and over the north curb of Page causing him to lose control as it continued on to knock down an electric signal located at the northeast corner of this intersection to cross Academy

and to strike the plaintiff on the sidewalk on the northwest corner of the intersection. At the time his automobile was struck by the bus he was about 45 feet east of the northeast corner of the intersection.

The driver of defendant's bus related a different chain of events. He was driving westwardly in the second lane from the north curb line of Page at a speed of about 20 miles per hour. It was his intention to turn to his right and stop in the bus stop zone to pick up some passengers. He started turning to his right to pull into the zone when he was about 15 to 55 feet west of the eastern edge of the bus zone. His testimony was that English's automobile was stopped as he approached and only after he started to angle into the zone did English start forward. His evidence was that when the front end of the bus was about four feet from the curb on its right, English overtook the bus and tried to pass on the right. His speed was then 5 to 7 miles per hour and he was slowing down. He estimated English's speed as he accelerated to pass at 20 to 30 miles per hour. When the front end of the bus was "close" to the intersection, the driver heard a "clicking" or "scraping" noise caused by English's automobile as it came against the bus at a point halfway between the front and rear doors. His testimony was that the impact between the bus and automobile was so slight it was not felt but heard by the passengers and himself.

The plaintiff testified she knew nothing of the collision between the bus and automobile and saw the automobile as it collided with the stop sign at the northeast corner of this intersection. She estimated its speed at 30 miles per hour at that time. She took a few steps trying to avoid being struck but was unsuccessful.

There was a great deal of other evidence and a number of other witnesses, passengers on the bus and passengers in the automobile, gave testimony but their support or contradiction of either theory is not pertinent to our inquiry. What has been above stated is sufficient to illustrate that there was conflicting evidence and divergent theories as to the cause of the collision between the automobile and the bus.

As to the defendant company Instruction 1 informed the jury that if they found that "* * * on the occasion shown in evidence * * *" the company "* * * failed to exercise the highest degree of care to keep a watch and lookout ahead as its bus approached the loading zone at the east side of Acadamy Avenue, and that such failure was negligent and that it directly caused the collision shown in evidence and the injury to plaintiff * * *," then their verdict should be for the plaintiff and against the company. Instruction 2, the submission against English, was identical except for the interchange of name.

The trial court also gave Instruction 3. This instruction told the jury that "* * * [i]f you find and believe from the evidence that negligence on the part of defendant St. Louis Public Service Company as submitted in these instructions directly combined and concurred with negligence on the part of defendant Francis X. English, as submitted in these instructions, * * *" to directly cause the collision and plaintiff's injury, then their verdict would be in favor of the plaintiff and against both defendants.

The defendant company also contends the trial court prejudicially erred in refusing to give certain other instructions which it offered. These instructions were B and D which were offered in the alternative, and Instruction C. Instruction C is a definitive instruction wherein the term "proximate cause" is defined to mean "* * * that cause, which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred."

Instruction B consists of two paragraphs the first of which is an abstract statement of law stating that "* * * before a defendant can be found to answer in damages

for injury to a plaintiff the negligence submitted against such defendant must be found to be the direct and proximate cause of such injury." Instruction D also contains two paragraphs and the first of these is an abstract statement of law. In that instruction the above quotation from Instruction B is repeated and then followed by a statement that if the negligence of another intervenes between that of a defendant and the injury to a plaintiff then the plaintiff cannot recover from such defendant. The second paragraphs of these instructions are identical in hypothesizing the failure of English to stop his automobile after the collision and while it traveled 85 feet before striking the plaintiff as intervening negligence and informing the jury that if they found the bus driver's negligence, if any, " * * * was not a direct and proximate cause of plaintiff's injuries, * * *" then they were to find for the defendant company.

■ The defendant company advances two arguments to support its contention the giving of Instruction 1 constitutes prejudicial error. It first contends the instruction, to quote from its brief, did not require " * * * the jury to find, that the collision between the bus and the automobile was the proximate cause of plaintiff's injury. * *" There is no merit to this argument. The instruction clearly required the jury to find that the failure to keep a lookout was negligence and that "it" directly caused the collision and the plaintiff's injury. The plain wording of the instruction makes clear that "it" refers to the negligence submitted; the failure to keep a lookout. Certainly the company cannot complain because the plaintiff assumed a burden greater than necessary by the use of the word "directly."

■ The company next contends that the instruction improperly injected into this case an alleged act of antecedent negligence which could not have been the proximate cause of plaintiff's injury. In support of this contention it emphasizes the words " * * * as its bus approached the loading zone at the east side of Academy Avenue * * *" as they appear in the instruction. The company's argument is that under the evidence the failure to keep a lookout had to occur after the bus entered the loading zone in order for it to be the direct cause of plaintiff's injury. It urges that failure to keep a lookout prior to that time constitutes antecedent negligence which could not have caused plaintiff's injury. We cannot agree that defendant was under no duty to keep a lookout until he pulled into the bus zone. This argument is based upon adoption of the company's testimony that the English automobile came from behind the bus and overtook it on the right. The witnesses who testified on behalf of English all stated that the company's bus was behind and to the left of the English automobile, when the latter began to move forward and that it overtook him. It was also his evidence that there was nothing ahead of him or that would have prevented the bus driver from seeing him. The jury therefore heard evidence which, if believed, it could reasonably infer that had the bus driver been keeping a proper lookout ahead, he could have seen the automobile driven by English.

■■ The defendant English attacks Instruction 2 upon the ground that it erroneously fails to hypothesize any facts by which the jury could resolve the conflict between the theories advanced by each defendant as to how the collision between them occurred. The simple answer to this contention is that in a lookout submission " * * * it is generally considered sufficient to hypothesize failure to keep a lookout and require a finding that such failure was negligence and directly caused the collision." Boehm v. St. Louis Public Service Co., Mo., 368 S.W.2d 361, l. c. 366(4), 367 and cases there cited. It is not necessary to hypothesize the exact manner and means by which either defendant could have avoided the collision so long as there is substantial evidence that he had the means and utility to have so acted that a collision would have been avoided. Boehm v. St. Louis Public Service Co., supra. As previously set forth

that evidence was present in this case. These assignments of prejudicial error as to Instruction 1 and 2 are without merit.

The allegation of prejudicial error brought by the company as to the giving of Instruction 3 is that it allowed the jury to return a verdict against both defendants when the only possible verdict must have been against one defendant or the other or neither. Each defendant also complains about the instruction on the ground that it assumed negligence on the part of that defendant.

■ The argument advanced by the company to support its separate allegation of prejudicial error proceeds upon the erroneous assumption that the jury must accept, in toto, the evidence advanced by the company or accept, again in toto, the evidence advanced by the defendant English. This is not the law under the facts of this case. There was ample evidence to support each facet of each of the defendants' theories. The plaintiff is entitled to that part of each defendant's case that aids her in making a case against the codefendant as well as against the defendant offering that evidence. The defendant company relies heavily upon evidence the defendant English was stopped when the bus was approaching. English's evidence was to the contrary and the plaintiff was entitled to use that part of English's evidence to make her case against the defendant company.

■ Instruction 3 could easily have been so worded as to remove the criticism that it assumed the defendants' negligence. However, we do not hold the giving of that instruction prejudicially erroneous. The reference to plaintiff's verdict-directing instructions is not as clear as it should have been yet we think the jury would understand from reading the plaintiff's verdict-directing instructions which immediately preceded Instruction 3 together with that instruction that they were not to assume the negligence of the defendants or of either of them. The instruction makes clear enough that if they found either defendant negligent under the other instructions submitted to them, then, reading this instruction, they were to determine if that negligence combined to cause the collision and plaintiff's injury. If their decision was in the affirmative, then they were to render a verdict against both defendants. While Instruction 3 could have been made more clear, we think it so clear to men and women of average intelligence that the giving of this instruction, even worded as it was, does not require our interference. Especially is this so when Instruction 15 is considered. That instruction informed the jury that " * * * the Court does not mean to assume as true or established * * * " any of the matters referred to in the instructions but left the jury " * * * to determine from the evidence whether or not they have been proved as facts by the evidence." See Mastin v. Emery, Bird, Thayer Dry Goods Co., 236 Mo.App. 487, 140 S.W.2d 720, where an instruction identical to Instruction 15 was held to cure an assumption of negligence, if any was made, in a verdict-directing instruction employing the phrase " * * * as submitted in this instruction."

■ We pass now to the three instructions which the trial court refused to give. It is obvious that Instruction C was an abstract statement of law which does not even attempt to relate the definition given to the issues of the instant case. It was not error to refuse this instruction. Mo.Digest, Trial, ■ Neither do we hold the trial court committed prejudicial error when it refused to give Instruction B and D. As stated previously each of these instructions consisted of two paragraphs the first of which was an abstract statement of law which informed the jury that before a defendant could be held to answer for damages the negligence submitted against him " * * * must be found to be *the* direct and proximate cause of such injury * * *." (Emphasis supplied.) This is not the law. A defendant is liable if the negligence of which he is alleged guilty is *a* proximate cause of an injury even though

it is not the sole proximate cause. The instruction therefore contained an abstract statement of law which was incorrect. Caldwell v. St. Louis Public Service Co., Mo., 275 S.W.2d 288, l. c. 292–293; Mo.Digest, Trial, ▮ Mo.Digest, Negligence, ▮ (1). This justifies the refusal to give the instruction.

▮ Instructions B and D were not only subject to the error stated above but also were contradictory and patently confusing. In the latter part of the second paragraph of each instruction the jury is instructed that if they found "* * * the negligence, if any, of the bus driver was not a direct and proximate cause of plaintiff's injuries, * * *" then they were to find for the defendant company. The first paragraph of this instruction informed the jury that their verdict was to be in favor of the company if the jury found the defendant company's submitted negligence was not *the* direct and proximate cause of plaintiff's injuries. The second paragraph informed the jury that their verdict was to be in favor of the company if they found the defendant company's submitted negligence was not *a* direct and proximate cause of plaintiff's injuries. The contradiction is patent and the confusion attendant had such instructions been given obvious. The trial court's action in refusing these instructions does not constitute reversible error.

It follows that the allegation of error brought by the defendants are without merit and the judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is affirmed.

WOLFE, Acting P. J., ANDERSON, J., and JAMES D. CLEMENS, Special Judge, concur.

RUDDY, J., not participating.