Charles K. BLACK, Respondent,

v.

**KANSAS CITY SOUTHERN RAILWAY CO.,**
a Corporation, Appellant.

No. 52371.

Supreme Court of Missouri,
En Banc.

Dec. 31, 1968.

Thomas E. Deacy, Jr., Joseph A. Sherman, Joseph W. Amick, Deacy & Deacy, Kansas City, for defendant-respondent, Charles Glen Fowler.

Richard S. Righter, Robert D. Youle, William H. Bates, David R. Smalley, Kansas City, for defendant-appellant Kansas City Southern Railway Co.; Lathrop, Righter, Gordon & Parker, Kansas City, of counsel.

I. Lee Kraft, Arthur H. Stoup, Solbert M. Wasserstrom, Kansas City, for plaintiff-appellant Charles K. Black.

STORCKMAN, Judge.

The plaintiff Charles K. Black sued Charles Glen Fowler and the Kansas City Southern Railway Company for $70,000 for personal injuries received when an automobile owned and operated by the defendant Fowler and in which plaintiff was a

passenger collided with a train of the defendant Railway Company at a grade crossing in the State of Kansas. The verdict and judgment was for the plaintiff and against defendant Railway Company for $25,000 and in favor of the defendant Fowler. The defendant Railway Company, herein sometimes referred to as the Railroad, appealed from the judgment against it and plaintiff appealed from the judgment in favor of defendant Fowler.

The appeals were heard twice in division and then transferred to the court en banc. Prior to the hearing en banc, the plaintiff dismissed his appeal from the judgment in favor of the defendant Fowler. Therefore, on the present submission, we are concerned only with the Railroad's appeal. In general the Railroad's contentions are that the plaintiff failed to make a submissible case, that there was no showing of proximate cause, that the plaintiff was guilty of contributory negligence as a matter of law, that the trial court erred in the giving and refusal of instructions to the jury, in permitting the plaintiff to amend prior to trial, and in refusing to grant a new trial because one of the jurors failed to make a full disclosure on the voir dire examination of the panel. The parties pleaded the law of Kansas as controlling. The plaintiff's verdict-directing instruction in the alternative submitted two theories of negligence, either that the Railroad failed to sound a timely warning or that it failed to maintain its right of way so as to allow an unobstructed view to oncoming motorists of the movement of its trains approaching the crossing. Portions of a previous opinion rendered in Division One are incorporated herein without the use of quotation marks.

The accident giving rise to this law suit occurred in Kansas while Mr. and Mrs. Charles Glen Fowler and the plaintiff were en route from Arcadia, Kansas, to Grand Lake in northeast Oklahoma. The Fowlers lived in Arcadia where Mr. Fowler was a banker. They kept a boat on Grand Lake and went there nearly every summer weekend as they had been doing for over twenty years taking the route traveled on this occasion. Dr. Black was a dentist in Kansas City, Missouri, with a part-time office in Arcadia. On Saturday, June 29, 1963, he had gone to Arcadia about noon and during the afternoon had worked in his office. His family was already at their summer place on Grand Lake. He was also familiar with the route taken, having driven it frequently. Dr. Black's 1957 Chevrolet overheated on the trip to Arcadia and he undertook to have it repaired but the repairs could not be completed in time for the trip to Grand Lake so he and the Fowlers arranged to go to Grand Lake together in the Fowler car.

Dr. Black testified that he and Glen Fowler each had a drink of bourbon whisky before they left the garage in Arcadia about 5:30 p. m. Glen Fowler was driving his 1959 Cadillac Sedan. Mrs. Fowler sat in the middle of the front seat and the plaintiff was on the right side. A black Labrador retriever belonging to the Fowlers was in the rear seat. The trip began on U.S. Highway 69 and continued on that road to its junction with K–26 and then south on K–26 to where the collision occurred about 6:00 p. m. at a grade crossing of the Kansas City Southern tracks and K–26 about 40 miles from Arcadia. At a point about 1½ miles north of the grade crossing, Fowler passed a southbound pickup truck driven by Ott Martin. Mr. Martin judged the speed of the Fowler car at this point to be "around 65", and his wife estimated it to be "between 60 and 70". There was evidence that Fowler drove the 40 miles from Arcadia in about 30 minutes. Dr. Black who was used to driving his 1957 Chevrolet testified that he asked Mr. Fowler how fast he was driving and Fowler replied 80 miles per hour; he then told Mr. Fowler that they were just a short distance from a railroad crossing and Fowler replied that he was doing 80 but everything was under control; Mrs. Fowler then spoke up and said, "Yes, Glen, you are driving too fast"; this conversa-

tion took place a few seconds before the train came into view and the collision occurred. In her testimony Mrs. Fowler denied that any such conversation took place.

The railroad tracks in question are part of a branch line between Pittsburg and Baxter Springs. South of the crossing the tracks are on the west side of K–26 and run generally north and south until a short distance south of the crossing where they curve to the east and cross the highway from southwest to northeast. K–26 is a north-south highway and is straight and level for some distance north of the crossing. Dr. Black and the Fowlers were all familiar with the crossing; it was marked by railroad crossbucks and highway signs visible for three-quarters of a mile. Dr. Black testified that as the Cadillac approached the crossing he looked in the direction from which the train came and saw the diesel engine come into view from the southwest when the automobile was about 350 to 400 feet north of the crossing. The train consisted of a general-purpose-type locomotive, two boxcars and a caboose which made a daily run from Baxter Springs to Pittsburg and return. The locomotive was approximately 58 feet long and each of the boxcars 50 feet. The train was moving at 20 miles per hour and did not change speed until the collision occurred. The fireman and the head brakeman on the west side of the locomotive first saw the Cadillac when it was 350 to 400 feet north of the crossing traveling 60 to 70 miles per hour. The front of their engine was then about 20 feet from the west shoulder of the highway.

There was no clear-cut evidence as to when Mr. Fowler saw the train and started to apply his brakes. He did not testify. Dr. Black testified that he remembered nothing of the actual collision and the events leading up to it after he saw the locomotive come into view. Mrs. Fowler testified that her husband applied the brakes as soon as the train appeared and she exclaimed that they were going to hit the train; that her husband turned the auto-

mobile to the right alongside the tracks; it went between the track and the crossbuck post and struck the rear step of the second freight car behind the engine and the front of the caboose. The impact wrecked the front of the Cadillac, especially on the left side, and uncoupled the caboose from the adjoining boxcar and broke the airhose thereby throwing the train into emergency braking. The train came to an emergency stop about 400 feet east of the highway. The caboose, separated from the rest of the train by the force of the collision, stopped about 100 to 200 feet east of the highway.

The Fowlers and Dr. Black were taken by ambulance to a hospital in Baxter Springs. Mr. Fowler was carried on a stretcher. The plaintiff testified that he also occupied a stretcher alongside Mr. Fowler, but there was testimony that he was standing and walking about after the accident and that he rode to the hospital with Mrs. Fowler in the front seat of the ambulance.

Clayton Carlson, a member of the Kansas Highway Patrol, arrived at the scene a few minutes after the collision. He testified that he found skid marks that led up to the point of impact. Actual noticeable skid marks began 122 feet from the crossing. The distance from the beginning of the skid marks to the point of impact was 137 feet. The skid marks started in the right lane of the highway and went off onto the right shoulder about 46 feet from the point of beginning. The maximum speed limit on K–26 under Kansas law was 70 miles per hour. From information obtained by Patrolman Carlson, it appeared that the accident occurred at 5:55 p. m. and he arrived at 6:04. He took pictures which were introduced in evidence; he found a picnic-type plastic ice bucket which contained ice cubes and water which had a brownish color and an odor that smelled like alcoholic beverage. There was an empty coke bottle in the container. The patrolman also testified with respect to the vegetation in the northwest segment of the

intersection. Other evidence will be referred to in connection with the questions presented.

■ The Railroad's first contention is that the trial court erred in refusing to direct a verdict for the defendant Railway Company because the evidence was insufficient to support a verdict for the plaintiff on either of the grounds of negligence submitted. We will first consider the submission that the defendant Railroad failed to sound a timely warning. The plaintiff correctly asserts that in reviewing the trial court's ruling of a motion for a directed verdict the evidence must be viewed most favorably to the verdict for the plaintiff, and he is to be given the benefit of all reasonable inferences. Kendrick v. Atchison, T. & S. F. R. Co., 182 Kan. 249, 320 P.2d 1061, 1068 [2]; Walsh v. Phillips, Mo., 399 S.W.2d 123, 125 [2].

The appellant pleaded § 66–2,120 of the Kansas statutes which provides in effect that the whistle of a locomotive engine shall be sounded at least 80 rods (1,320 feet) from the place where the railroad crosses any public road, that it shall be prolonged or repeated until the crossing is occupied by the engine or car, and that the company shall be liable for damages sustained by any person by reason of neglect to do so. Members of the defendant's train crew testified that the statutory signal was given and that the whistle was blown and the bell rang continuously as the train approached the crossing. A woman who lived nearby, southeast of the crossing, also testified that she was in her yard with her grandchild at the time the train passed and that its whistle was sounded. Shortly after the train passed, she heard the noise from the collision. On the other hand, the persons on the highway north of the crossing testified that they did not hear the whistle sounded or the bell ring. The plaintiff and Mrs. Fowler testified that the windows of the Cadillac were closed and the air-conditioning was on but it was possible for them to hear sounds from the outside and they did not hear any crossing signals. Mr. and Mrs. Ott Martin, who were about one-half mile north on the highway just prior to the collision, testified that they did not hear any warning whistle or bell.

■■ The testimony of plaintiff, Mrs. Fowler, and Mr. and Mrs. Martin is negative evidence but it does not follow that such testimony is without substance or probative value. Testimony of a witness that he did not hear or did not see is positive and probative evidence where it is probable or reasonably certain in the circumstances shown that the witness could or would have heard or seen if the event had occurred. Lafferty v. Wattle, Mo.App., 349 S.W.2d 519, 527 [14, 15]; Dickerson v. Terminal R. Assn., Mo., 284 S.W.2d 568, 572 [6]; Hackett v. Wabash R. Co., Mo., 271 S.W.2d 573, 578 [12]; Annotation: "Probative force of testimony offered to show that crossing signals were not given on approach of train", 162 A.L.R. 9, 64. Tested by these standards, the testimony of the plaintiff's witnesses that they heard no whistle or bell constituted substantial evidence and created an issue for the jury.

■ The Railroad asserts, however, that the plaintiff cannot rely upon the testimony of Mrs. Fowler and Ott and Marjorie Martin on this issue because such testimony was offered in the case of the codefendant Fowler. The authorities cited by the Railroad do not support the contention made. In ruling a motion for a directed verdict at the close of the entire case, the court must take into consideration all of the evidence and the plaintiff is entitled to the benefit of any substantial evidence as well as favorable inferences that may reasonably be drawn. Story v. People's Motorbus Co., 327 Mo. 719, 37 S.W.2d 898, 900 [3]; Merz v. Tower Grove Bank & Trust Co., 344 Mo. 1150, 130 S.W.2d 611, 620 [8, 9]; Taylor v. St. Louis Public Service Co., Mo.App., 382 S.W.2d 411, 415 [5–7]. The plaintiff is entitled to have the court as well as the jury consider such evidence.

The Railroad further contends that the automobile driver's negligence was the sole proximate cause of plaintiff's injuries under Kansas law which is the substantive law applicable in this case. In determining the applicable law of Kansas, we must discard the numerous cases relied upon by the Railroad where a railroad was held not liable in an action by a *driver* of a vehicle which collided with a train. In such cases, once the negligence of a *driver* is proximately related to his injury, the negligence of the railroad becomes immaterial, even though it might also have contributed to cause the injury. The contributory negligence of the driver defeats his claim to recovery. However, a passenger in an automobile which collides with a train is not denied the right to assert that his injury was caused by the concurrent negligence of the driver and the railroad. Corley v. Atchison, T. & S. F. R. Co., 90 Kan. 70, 133 P. 555; Kendrick v. Atchison, T. & S. F. R. Co., 182 Kan. 249, 320 P.2d 1061, 1072–1075. In this case, the concurrrent negligence of Mr. Fowler and the Railroad having been asserted, the claim of the Railroad that the injury was caused *solely* by the negligence of Mr. Fowler actually resolves itself into two propositions: First, that the defendant Railroad was guilty of no negligence and, second, that even if it was negligent, its negligence could not have been a proximate cause of the plaintiff's injury.

The Railroad is particularly assertive of the second proposition. It contends that under Kansas law where an automobile collides with a train in full view on a crossing no negligence of the railroad can be the proximate cause. It cites Bledsoe v. Missouri, K. & T. R. Co., 149 Kan. 741, 90 P.2d 9, Shepard v. Thompson, 153 Kan. 68, 109 P.2d 126, and Richards v. Chicago, R. I. & P. Ry. Co., 157 Kan. 378, 139 P.2d 427, as cases in which the negligence of a driver was held to have been the sole proximate cause of the collision, thereby defeating a passenger's action against the railroad. However, those cases involved charges of negligence against the railroad based on its failure to maintain adequate warning signals at a crossing. In the Richards case the court specifically noted that the charge of negligence based upon alleged failure of the locomotive to sound a signal was not supported by evidence. 139 P.2d at pages 429–430.

Kendrick v. Atchison, T. & S. F. R. Co., 182 Kan. 249, 320 P.2d 1061, is similar on the facts to the case at bar and states the law dispositive of practically all the questions relating to the submissibility of the issue of failure to warn. The plaintiff was a passenger in an automobile driven by a fellow employee en route to their place of work. The driver struck a train at a grade crossing where the view was unobstructed and the sole charge of negligence was the failure of the railroad to warn. In the Kendrick case the Supreme Court of Kansas held, inter alia, that the rule barring a negligent driver from recovery does not apply with the same force to a passenger in a motor vehicle which collides with a train at a crossing and the negligence charged is failure of the train crew to whistle for the crossing. 320 P.2d at page 1069. In Kendrick the court pointed out that in Harmon v. Atchison, T. & S.F. R. Co., 171 Kan. 403, 233 P.2d 489, likewise relied upon here by the Railroad, the charge of failure of the train to signal had been disproved by plaintiff's own evidence. 320 P.2d at page 1069. Other cases relied on by the Railroad, such as Corkill v. Thompson, 169 Kan. 38, 217 P.2d 273, Sheets v. Baldwin, 146 Kan. 596, 73 P.2d 37, Jones v. Atchison, T. & S.F. R. Co., 129 Kan. 314, 282 P. 593, and Eason v. Missouri Pacific R. Co., 191 Kan. 39, 379 P.2d 351, involved actions by drivers rather than passengers. Moreover, none involved the charge of negligence that the railroad failed to sound a timely warning.

On the particular facts of this case, the Railroad presents mathematical computations which it contends show that if the automobile had been traveling at a lawful speed there would have been adequate time

after the train came into view for the auto to have been stopped short of a collision. The plaintiff's evidence, however, tends to show that the vehicle was traveling at a speed of 80 miles per hour when the train first appeared which was in excess of the legal limits. Under these circumstances and the evidence as to time and stopping distances, it appears that the automobile could not have been stopped in time to avoid the collision after the train came in view. These and other factual arguments, however, were for the jury. Under the substantive law of Kansas as declared in the Kendrick case, it cannot be said as a matter of law that the negligence charged did not have a proximate causal connection with plaintiff's injury.

The rules by which the contributory negligence of a guest or passenger in an automobile that collides with a train must be decided were also considered and stated in Kendrick v. Atchison, T. & S.F. R. Co., 320 P.2d at page 1073–1074 [14, 15]: "The test applied to determine whether the passenger is contributorily negligent has varied somewhat over the years. Laws of the early cases which repudiated the doctrine of imputable negligence discussed the duty of the passenger. [citing cases.] * * * Two of the more recent cases cited state the duty of the passenger in this language. In Shepard v. Thompson, supra, the court said: ' * * * The rule is well established in this state that a guest or passenger in an automobile is under a duty to exercise reasonable care and precaution for his own protection, that he cannot recover damages if he fails to exercise such precaution and to give warning to the driver of an imminent danger. * * *.' 153 Kan. [68], at page 74, 109 P.2d [126], at page 130.

"In Miller v. Union Pac. R. Co., supra, the court said: ' * * * As a passenger, it was his duty under the decisions of Kansas to exercise reasonable care and precaution for his protection. It was his duty to look for approaching trains and warn the driver thereof. Failure to do these things would constitute contributory negli-

gence on his part. * * *.' 196 F.2d [333] at page 335."

■ Under this test, a passenger cannot sit by and do nothing in the face of known danger or danger which should have been recognized without being guilty of contributory negligence. Wilson v. Cade, Mo. App., 375 S.W.2d 577, 581 [6, 7]; Ross v. Fleming, 165 Kan. 279, 194 P.2d 491, 495 [4]; D'Hondt v. Hopson, 10 Cir., 269 F.2d 759; Shelite v. Chicago, R.I. & P. R. Co., 10 Cir., 307 F.2d 48; Shepard v. Thompson, 153 Kan. 68, 109 P.2d 126; Koster v. Matson, 139 Kan. 124, 30 P.2d 107; Donelan v. Wright, 148 Kan. 287, 81 P.2d 50; nor can he be free of contributory negligence if he fails to maintain a lookout for the approach of trains at an intersection, Wells v. Wachtelborn, Mo. App., 410 S.W.2d 558. See also Christie v. Atchison, T. & S.F. R. Co., 154 Kan. 713, 121 P.2d 208, 210 [2–4]; Wehe v. Atchison, T. & S.F. R. Co., 97 Kan. 794, 156 P. 742, L.R.A.1916E, 455; Brim v. Atchison, T. & S.F. R. Co., 136 Kan. 159, 12 P.2d 715; Horton v. Atchison, T. & S.F. R. Co., 161 Kan. 403, 168 P.2d 928. The plaintiff's conduct in this case, however, does not bring him within the purview of these cases.

■ Viewing the evidence on this issue most favorably to plaintiff's case, there is nothing to show want of due care on the part of his host driver in the early stages of the trip. When Mr. Fowler increased his speed to 80 miles per hour, plaintiff noted the difference and remarked to his driver on his speed and proximity to the upcoming crossing and asked him to slow down. This occurred but 10 to 15 seconds before the collision. The plaintiff was looking ahead and observed the train when the engine came into view. Under the holding in Kendrick as applied to the evidence most favorable to the plaintiff, he was not guilty of contributory negligence as a matter of law. The issue was for the jury.

The contention that a submissible case was not made on the assignment that the Railroad negligently maintained its right of way by permitting vegetation to grow thereon will be considered in connection with the contention that the instruction submitting this issue was erroneous. Instruction 4 submitting disjunctively two different grounds of recovery reads as follows:

"Your verdict must be for plaintiff and against the defendant, The Kansas City Southern Railway Company, if you believe:

"First, defendant Railway either: failed to sound a timely warning, or *failed to maintain its right of way so as to allow an unobstructed view to oncoming motorists of the movement of its trains approaching said crossing.*

"Second, defendant Railway's conduct in any one or more of the respects submitted in paragraph First was negligent, and

"Third, as a direct result of such negligence plaintiff sustained damage, unless you believe plaintiff is not entitled to recover by reason of Instruction Number 6.

"The term 'negligence' as used in this instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." Emphasis added.

The Railroad's Rule No. 455, plaintiff's Exhibit 36, provides that: "The right of way should be kept clear of obstructions such as vegetation, piles of material and, if possible, buildings that would obscure view from highways of approaching trains." There is a further direction that where possible the permission of adjoining landowners should be obtained to prevent or remove obstructions interfering with the view. We are not concerned with respect to this latter provision as a ground of negligence because the charge of negligence and the submission are limited to the maintenance of defendant's right of way.

■ Contrary to the weight of authority, the Supreme Court of Kansas holds that the existence of unnecessary trees, buildings, or other like objects on a right of way obstructing the view of a railroad track may form an independent ground of negligence. Adams v. Missouri, K. & T. R. Co., 119 Kan. 783, 241 P. 1086, 1087. See also Corley v. Atchison, T. & S.F. R. Co., 90 Kan. 70, 133 P. 555, 556, and Burzio v. Joplin & P. Ry. Co., 102 Kan. 287, 171 P. 351, 353–354. The plaintiff also cites us to 44 Am.Jur., Railroads § 505, p. 745, dealing with obstruction of a view as negligence. This section as well as § 507 indicates that where obstruction of the view is not recognized as an independent ground of recovery the existence of such obstruction may be considered upon the care and vigilance which the company is bound to exercise in running its trains and giving a warning of their approach. In 74 C.J.S. Railroads § 741, p. 1387, the same idea is expressed as follows: "As a general rule the existence of obstructions to view or hearing is a circumstance bearing on the question whether a railroad company has performed its full duty as to lights and warnings and signals of approach, * *." The defendant Railroad does not seriously deny that in Kansas vegetation on a right of way which obstructs the view may constitute a separate ground of negligence but strenuously insists that the evidence is not sufficient to support the submission made by instruction 4 or by any other instruction in this case.

■ Instruction 4 set out above was plaintiff's verdict-directing instruction submitting in the alternative both grounds of negligence. The Railroad contends that the language of the instruction as to the maintenance of defendant's right of way which postulates "an unobstructed view to oncoming motorists of the movement of its train approaching said crossing" is too broad and unrestricted and imposes a duty

of maintenance more stringent than the ordinary care required by law. Obstruct means to lock up, to stop up, or to close; it may mean to hinder, impede, or retard. In other words, there may be a complete or partial obstruction of view. Rule 455 is a directive by the defendant to its employees, but it is not the source of the defendant's obligation to the public. Apart from such rule, court decisions and orders of public service commissions have defined the duty as the exercise of ordinary care. Therefore, the language of Rule 455 is not controlling and need not be used in jury instructions if the duty can be otherwise more clearly expressed.

 The real test is whether the defendant had permitted a growth of vegetation to develop on its right of way which would prevent a southbound motorist near the crossing but in a position of safety, exercising reasonable and ordinary care for his own safety, from *seeing* a train approaching from the south. It must be kept in mind that the terrain at the place in question was level, that there were no substantial cuts or embankments, that the locomotive and boxcars were from 14 to 15 feet high, and the train was approximately 200 feet long. Also the tracks did not cross the highway at a right angle but from the southwest at an angle of 30 to 40 degrees west of due south.

In Van Buskirk v. Missouri-Kansas-Texas R. Co., Mo., 349 S.W.2d 68, 70, a case decided under Kansas law, the submission was whether the vegetation "dangerously and materially obstructed" the view. In Burzio v. Joplin & P. Ry. Co., 102 Kan. 287, 171 P. 351, 352, L.R.A.1918C, 997, a question put to the jury was whether the vegetation on the defendant's right of way obstructed the view to the extent that a motorist "could not, with reasonable and ordinary care and diligence, have *seen* the approaching" electric train until the motorist was too near the crossing to avoid injury. Emphasis added. See also Corley v. Atchison, T. & S.F. R. Co., 90 Kan. 70,

133 P. 555, where the emphasis was on the ability of a person on the highway to *see* a train on the track.

 In the circumstances of this case, instruction 4 was confusing and misleading; it did not clearly advise the jury of the defendant's legal duty. The language of an instruction should be so plain that no doubt can arise as to its meaning. Lawson v. Davidson, Mo., 344 S.W.2d 76, 79 [2]. We cannot agree with the plaintiff's assertion that the defendant's complaint would require that the spirit of the new Missouri Approved Instructions would be completely ignored. The real spirit of this new method of instructing is to require the use of simple, direct, concise and unambiguous words and phrases that do not require further definition where that is possible. The words used in the instruction violate rather than conform to the spirit of Missouri Approved Instructions. We hold that the instruction was prejudicially erroneous.

In view of the fact that the cause must be remanded for a new trial, a further question must be ruled. It is the defendant's contention that there was no substantial, probative evidence of vegetation on its right of way which would support the submission of this ground of negligence or make it the proximate cause of the collision.

 The Railroad's right of way is 100 feet in width with the tracks in the center. The highway is 60 feet in width, a 20-foot pavement with 20-foot shoulders and ditches on either side. The angle formed by the western limits of the highway and the Railroad's rights of way in the northwest segment of the crossing is from 140 to 150 degrees. A farm house and a barn were located in this corner according to the plat in evidence as defendant's exhibit 42. There was testimony indicating that the house was unoccupied at the time of the accident. The evidence is clear that there was a thick growth of vegetation on the east and south sides of the house at or

near the highway and Railroad right of way fences. In his brief filed April 11, 1967, the plaintiff states: "The real issue on this branch of the case is therefore whether or not all of the vegetation in question was on the adjoining private property, or whether on the other hand, at least some of said trees and shrubberies were on the defendant's right-of-way." We need not state in detail the testimony of witnesses relied on by plaintiff for proof that "a considerable amount of the trees and shrubbery in question was on railroad property." For example, the plaintiff asserts that the adopted son of the plaintiff "James Black testified that there were trees and shrubs only 15 to 20 feet west of the track." He was at the scene of the accident the day after the accident happened. He did not know how far the right of way extended but in answer to a request for "some element of footage" stated: "Well, there were the rocks where the train tracks were, the rocks where the train tracks, you know, go across, and then it's real grassy there, kind of weeds, you know, and then gets bigger as it goes on back. I guess the farmer is making a windbreaker there, because there was a field behind the trees and shrubs and stuff, just about—the trees and shrubs were about maybe 20 feet away from the track, 15 or 20 feet." He said some of the trees and shrubs were 15 to 20 feet tall. On cross-examination he admitted that he was not accurate about footage and stated that exhibits 14, 15 and 16 portrayed the right of way as he had seen it when he was there. He stated that he did not measure the distance or height. The same is true of other witnesses that testified in this regard. There was testimony that there was "spring growth" on the right of way in the nature of grasses and sumac; the dense growth was at or near the right of way fence. If left to the testimony of witnesses, the location, the size, and the extent of the vegetation on the Railroad right of way would be sheer speculation and guesswork hardly satisfying the requirement of substantial proof that the defendant Railway Company had allowed vegetation to grow on its right of way of a kind and in such a location that southbound travelers on the highway would be unable to see trains approaching from the southwest. The proposition is well established that mere estimates of distance and height hurriedly made by witnesses are not likely to be accurate and must yield to measurements actually taken or other compelling proof. Borrson v. Missouri, K. & T. R. Co., 351 Mo. 229, 172 S.W.2d 835, 849 [13]; Dimond v. Terminal R. R. Ass'n of St. Louis, 346 Mo. 333, 141 S.W.2d 789, 797 [7]; Luettecke v. City of St. Louis, 346 Mo. 168, 140 S.W. 2d 45, 47 [1]. There is proof of physical facts contrary to the testimonial estimates and opinions.

Numerous photographs were placed in evidence and used by all the parties at the trial. There is no suggestion that they do not accurately portray the physical facts then existing. Plaintiff's exhibit 28 taken about 800 feet north of the Railroad crossing shows the highway marker indicating the crossing as well as the crossbucks. It further shows that along the fence on the west side of the highway right of way there is an impenetrable growth of vegetation that completely obscures any growth that might have existed along the Railroad right of way fence. From that distance it might very well be termed "a blind crossing". Plaintiff's exhibit 29 taken 300 feet north of the crossing permits some view of the Railroad right of way and shows at least two shrubs on the highway right of way north of its junction with the Railroad right of way. Exhibit 30 was taken 100 feet north of the crossing looking southwest down defendant's right of way; it shows spring growth but nothing on the right of way that would obscure the view of an engine and train of the height indicated. Exhibits 14 and 15 were introduced in evidence by the defendant Fowler and exhibit 16 by the defendant Railway Company. The parties stipulated that these exhibits were pictures taken by the official photographer for the Kansas

Highway Patrol about one and one-half hours after the accident happened. All three are taken north of the crossing but the distances are not precisely indicated. Exhibit 14 was taken north of the beginning of the skid marks so it was taken somewhat farther than 122 feet north of the crossing. This is a view down the right of way; it shows the shrub near the corner to be north of two utility poles. Exhibit 15 is somewhat comparable to plaintiff's exhibit 30. It shows the point where the right front wheel of the Cadillac skidded from the pavement onto the shoulder. This view down the Railroad right of way reveals markers along the tracks and telephone poles near the right of way fence but no vegetation of sufficient height to prevent seeing a locomotive and railroad cars. Exhibit 16 taken by the Kansas Highway Patrol completely refutes the estimates given by witnesses that there were trees within 15 or 20 feet of the tracks. The tracks and the right of way are clearly visible for an indefinite distance; the only growth on the right of way west of the tracks are grasses and weeds that could not possibly prevent a person on the highway seeing a train approaching from the southwest.

"What may be seen from a certain place under admitted or undisputed conditions and circumstances, and the view or line of sight under such circumstances is a physical fact, clearly and unequivocally demonstrable by photographic evidence. And where physical facts speak with a force which overcomes testimony to the contrary, reasonable minds must accept and follow the physical facts and therefore cannot differ. It has long been the rule in this jurisdiction that where testimony is, beyond any reasonable doubt, contrary to established physical facts or laws and facts of common knowledge, it cannot be accepted as substantial evidence. And if the testimony of a witness upon a material issue is inherently impossible, or is so opposed to all reasonable probability as to be manifestly false, the courts are not bound

to accept it and will wholly disregard it." Lohmann v. Wabash R. Co., 364 Mo. 910, 269 S.W.2d 885, 891 [1–4]. See also Hupman v. Missouri-Kansas-Texas Railroad Co., Mo.App., 429 S.W.2d 343, 347 [4]. The evidence on this issue does not constitute substantial proof of negligence or proximate cause and the issue should not be submitted as an independent ground of negligence on a retrial.

The other questions presented need not be treated since they are not likely to recur at another trial.

The judgment is reversed and the cause remanded.

All of the Judges concur.